UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PETER MAZONAS, et al.,

    Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC, et al.,

    Defendants.

Case No. 16-cv-00660-RS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

For approximately ten years, plaintiffs Peter and Marcia Mazonas made monthly mortgage payments to defendant Bank of America, N.A. ("BOA"). On the fifteenth of each month, BOA withdrew half the amount due by the first of the following month and applied the payment immediately. It withdrew the second half of the monthly payment on the final day of each month. These two partial payments constituted the full amount due on the first of each month.

In 2013, defendant Nationstar Mortgage, LLC, acquired from BOA the right to service the Mazonases' home loan. The transition was to take place on November 1, 2013, the same day the Mazonases' mortgage payment was due. Leading up to this transition, BOA withdrew a partial payment on October 15 and again on October 31, as it had many times before. Nationstar did not, however, treat those two payments as full payment of the amount due on November 1 and concluded the account was delinquent. As a result, the Mazonases claim injury in the form of adverse credit ratings and inaccurate payment records.

The Mazonases advance four claims for relief against Nationstar and BOA for violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* (2016); the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (2012), and its attendant Regulation Z, 12 C.F.R. § 226.36(c) (2013); and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (2016). They also pursue a claim for breach of contract under California law. Both defendants move to dismiss the claims. Pursuant to Local Rule 7-1(b), these motions are suitable for disposition without argument.

The first claim for relief must be dismissed with prejudice because the CLRA does not apply to intangible products, like home loans, or ancillary services connected with those goods. The Mazonases' remaining three claims are adequately pleaded, and therefore may advance.

## II.   BACKGROUND[1]

In 2003, the Mazonases obtained a home loan from BOA, secured by a Deed of Trust on their property. The Note and the Deed of Trust obligate the Mazonases to make monthly payments of $2,792.65 "on the 1st day of each month" until the principal and interest are paid in full. BOA RJN Ex. A. at 1. Each payment must "be applied as of its scheduled due date." *Id.*

The Mazonases were attracted to a particular loan servicing feature BOA offered: twice-monthly automatic withdrawals from their bank account, which BOA applied on the date of receipt. Thus, for approximately ten years, BOA automatically withdrew $1,396.50 from the Mazonases' bank account on the fifteenth of each month, and then again withdrew the same amount on the last day of each month. The second withdrawal constituted full payment of the

---

[1] All facts are drawn from the complaint. In addition, BOA and Nationstar have submitted requests for judicial notice, which include the Note, Deed of Trust, letters from BOA and Nationstar to the Mazonases, and the Mazonases' letter to the Consumer Financial Protection Bureau ("CFPB") with exhibits. *See* BOA RJN; Nationstar RJN. As a general rule, courts and the parties may not consider extrinsic evidence not attached to the complaint unless the authenticity of the document is not contested and the claims for relief necessarily rely upon the documents. *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015). The Mazonases do not oppose these requests for judicial notice or challenge the authenticity of the documents. Moreover, the complaint specifically references the terms of the home loan agreements, the letters from Nationstar and BOA, and the letter to the CFPB, and therefore these documents are appropriate for judicial notice, and considered for the purposes of this motion.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
CASE NO. 16-cv-00660-RS

2

amount due on the first of each month. This partial payment option was particularly attractive to the Mazonases because less interest would accrue over time.

In October 2013, BOA notified the Mazonases of Nationstar's plan to acquire the right to service their loan effective November 1, 2013. BOA informed them the transfer would "not affect any terms or conditions of [their] mortgage loan, other than those terms directly related to servicing of the loan." BOA RJN Ex. C. This notice further explained that BOA's automatic payment program would be discontinued as of October 31, 2013.

Nationstar also sent the Mazonases a letter detailing how the transfer would go into effect. This letter informed the Mazonases that BOA would forward any payments received to Nationstar, which would credit their account once the forwarded payment was received. In addition, Nationstar agreed to accept partial payments "until the account becomes delinquent." Nationstar RJN Ex. 4. Once Nationstar determines an account is delinquent, however, partial payments are placed in a suspense account until receipt of the remainder of the full amount due.

On October 15, 2013, BOA withdrew $1,396.50 from the Mazonases' bank account—half the amount due on November 1, 2013. On October 31, 2013, BOA withdrew the second half of the November payment: $1,396.50. The Mazonases believed they had paid the full amount due on November 1, 2013.

After the transfer to Nationstar, the Mazonases tried to establish a twice-monthly payment schedule, but could not do so because Nationstar claimed their mortgage was delinquent. Surprised by this news, they called, emailed, and sent letters to Nationstar representatives. In response to these requests Nationstar sent "boilerplate responses . . . that did not address the issues" in the complaints. Compl. ¶ 52. Throughout 2014, Nationstar continued to treat the Mazonases' account as overdue. In February 2014, Nationstar sent the Mazonases a check in the amount of $1,395.15 (thirty-five cents less than the half payment).

In December 2014, Peter Mazonas sent a letter to the Consumer Financial Protection Bureau ("CFPD"), complaining about the transition to Nationstar. In January 2015, Nationstar responded to this letter, claiming the Mazonases had paid only $1,396.15 for November 2013, and

1  therefore their payment was untimely.  Prompted by this response, the Mazonases reexamined
2  their billing statements from Nationstar and concluded the payment history did not reflect the
3  remaining balance on the loan, which was several hundred dollars higher than they expected.
4       In January 2016, the Mazonases filed this action in Marin County Superior Court.
5  Subsequently, Nationstar removed the action to federal district court.

### III.  LEGAL STANDARD

7       "A pleading that states a claim for relief must contain . . . a short and plain statement of the
8  claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  "[D]etailed
9  factual allegations are not required," but a complaint must provide sufficient factual allegations to
10 "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
11 (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  In addition, "in allegations of fraud or
12 mistake, a party must state with particularity the circumstances constituting fraud and mistake."
13 Fed. R. Civ. P. 9(b).  To satisfy this requirement, a plaintiff must plead "the who, what, when,
14 where, and how that would suggest fraud." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)
15 (internal quotation marks omitted).  "A plaintiff must set forth *more* than the neutral facts
16 necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about
17 a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.
18 2003) (internal quotation marks and alteration omitted) (emphasis in original).
19      Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency
20 of the averments in the complaint.  Dismissal is appropriate when the complaint "fail[s] to state a
21 claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint in whole or in
22 part is subject to dismissal if it lacks a cognizable legal theory or the complaint does not include
23 sufficient facts to support a plausible claim under a cognizable legal theory. *Navarro v. Block*,
24 250 F.3d 729, 732 (9th Cir. 2001).  When evaluating a complaint, the court must accept all its
25 material allegations as true and construe them in the light most favorable to the non-moving party.
26 *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content
27 that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* This standard requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). When plaintiffs have failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

## IV.   DISCUSSION

### A. Claim 1: CLRA Violation

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). "Goods" within the meaning of the CLRA are "tangible chattels," and "'[s]ervices' means work, labor, and services for other than commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* at § 1761(a)-(b).

The California Supreme Court has interpreted these definitions such that the CLRA's protections do not extend to the sale of life insurance. *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61 (2009). The court reasoned life insurance contracts are not "tangible chattels," and therefore not "goods" under the CLRA. *Id.* The plaintiffs also argued the work and labor in connection with helping consumers select insurance policies, assisting policyholders to maintain their policies, and processing claims were all "services" under the CLRA. *Id.* at 65. The California Supreme Court rejected that argument, as well: "Using the existence of these ancillary services to bring intangible goods within the coverage of the [CLRA] would defeat the apparent legislative intent in limiting the definition of 'goods' to include only 'tangible chattels.'" *Id.*

Following *Fairbanks*, the California Court of Appeal concluded the CLRA's prohibitions do not extend to mortgage loans or the ancillary services connected with servicing home loans. *Alborzian v. JP Morgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 33 (2015) ("*Fairbanks* applies with equal force to lenders."); *see also, e.g.*, *Kirkeby v. JP Morgan Chase Bank, N.A.*, No.

13CV377 WQH-MDD, 2014 WL 7205634, at *8-9 (S.D. Cal. Dec. 17, 2014) (holding loan modification programs are not goods or services within the meaning of the CLRA); *Sonoda v. Amerisave Mortgage Corp.*, No. C-11-1803 EMC, 2011 WL 2690451, at *2 (N.D. Cal. July 8, 2011) ("If a contractual obligation to *pay* money (under an insurance contract) is not a service, then neither is a contractual obligation to *lend* money." (emphasis in original)); *Reynoso v. Paul Fin., LLC*, No. 09-3225 SC, 2009 WL 3833298, at *9 (N.D. Cal. Nov. 16, 2009) (concluding the CLRA does not extend to "ancillary services" in connection with mortgage loans).

The Mazonases first contend *Alborzian* is not binding because it is the opinion of the California Court of Appeal, not the California Supreme Court. In the absence of binding authority of the California Supreme Court, federal courts must turn to the California Court of Appeal for guidance "unless there is convincing evidence" the California Supreme Court "would decide differently." *Owen By & Through Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) (internal quotation marks omitted).

No such compelling evidence exists. Standing alone in opposition to *Alborzian*'s holding is the opinion of one federal district court: *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1156-57 (C.D. Cal. 2012). In *Rex*, a district court concluded that even after *Fairbanks* plaintiffs could state a valid CLRA claim related "to a real estate transaction where the lenders' interaction with the borrower goes *beyond* a contract to exten[d] credit." *Id.* at 1156 (internal quotation marks omitted, emphasis in original). Thus, "a defendant-lenders' advising plaintiffs and managing their loan, constitute 'services' as defined by § 1761(b)." *Id.* (citing *Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842, 851 (N.D. Cal. 2007)) (internal quotation marks and alteration omitted).

*Rex* relied upon pre-*Fairbanks* authorities, and therefore its persuasive value is limited to the extent it is convincing at all. *Biggs v. Bank of Am. Corp.*, No. EDCV 15-00267-VAP, 2015 WL 3465739, at *6 (C.D. Cal. June 1, 2015). More to the point, the opinion of one federal judge is not convincing evidence that the California Supreme Court would disagree with the intermediate court. Most importantly, however, is the fact *Rex* is difficult to square with the logic of *Fairbanks*. Certainly insurance agents have extensive contact with their customers, as do

insurance claims processors. Yet, these customer services are not subject to the CLRA because the product these people help service is not a "tangible chattel." *See Fairbanks*, 46 Cal. 4th at 65. The same must be true of mortgage servicers.

Next, the Mazonases claim *Alborzian* supports their position because the court of appeal noted *Rex*'s contrary holding. An acknowledgement of a contradictory opinion is not, however, an endorsement. There is therefore no credible way to read *Alborzian* as favorable to the Mazonases' position.

Finally, the Mazonases insist *Alborzian* is distinguishable because the court did not address whether the CLRA applied to loan servicers' actions during a transition to a new servicer. They do not explain, however, why the CLRA would apply to lenders' actions during a transition period when it does not apply at any other time. Thus, while the Mazonases have identified a distinction between this case and *Alborzian*, they have not explained why it makes a difference. Accordingly, plaintiffs' CLRA claim is dismissed without leave to amend because there appears no viable legal theory for this claim. *Becker v. Wells Fargo bank, N.A., Inc.*, No. 2:10-CV-02799 LKK, 2011 WL 1103439, at *14 n.5 (E.D. Cal. Mar. 22, 2011) ("Where amendment would be futile, no opportunity to amend need be provided.").

### B. Claim 2: TILA Violation

Plaintiffs must file claims arising under TILA "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).[2] The violation usually occurs on "the date of the consummation of the transaction," *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986), which all parties agree was when BOA withdrew the second half of the Mazonases' November 2013 payment: October 31, 2013. They disagree, however, about whether the doctrine of equitable tolling relieves the Mazonases of the need to file claims by October 31, 2014, which they

---

[2] In contrast to actions such as this for civil liability, actions to exercise the right of rescission must be filed within three years "after the date of consummation of the transaction or upon the sale of property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor." 15 U.S.C. § 1635(f).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
CASE NO. 16-cv-00660-RS
7

did not.

Courts in the Ninth Circuit "apply equitable tolling in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (internal quotation marks omitted). "A district court may grant a motion to dismiss on statute of limitations grounds 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 873 (N.D. Cal. 2010) (quoting *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000) (internal quotation marks omitted)). Often the issue of equitable tolling is too fact-dependent "to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue." *Id.* Nationstar and BOA contend this complaint nonetheless qualifies for the rare exception recognized in *Davenport*.

The Mazonases claim they diligently requested from BOA and Nationstar historical payment records and copies of the original loan documents. These requests either went unanswered or were unsatisfactory. Without the underlying documents related to the loan, the Mazonases did not understand that BOA failed to apply the October 15 payment, or that Nationstar treated the October 31 payment as a partial payment rather than the second half of a full payment. According to the Mazonases, the root of the confusion came to light only after Nationstar responded to the Mazonases' complaint to the CFPB in January 2015. Accepting these representations as true, the Mazonases have sufficiently demonstrated their efforts to uncover the source of the confusion. These averments are enough to suggest equitable tolling may be appropriate here. Accordingly, the Mazonases' TILA claim will not be dismissed for their failure to file claim within the statute of limitations.

Nationstar (but not BOA) contends the TILA claim must be dismissed for the additional reason that the complaint does not adequately plead a violation of TILA or Regulation Z. Promulgated to effectuate TILA's regulatory scheme, Regulation Z requires loan servicers "to credit a payment to a consumer's loan account as of the date of receipt, except when a delay in

crediting does not result in any change to the consumer or in the reporting of negative information to a consumer reporting agency." 12 C.F.R. § 226.36(c)(1)(i).

Nationstar challenges the Mazonases' ability to claim injury for a violation of Regulation Z because they submitted a *partial* payment, and section 226.36(c)(1)(i) does not apply to partial payments. According to the complaint, however, the Mazonases had submitted a *full* payment; the October 31 withdrawal constituted the final sum necessary to make the full November 1 payment. Thus, the Mazonases have sufficiently pleaded facts supporting a claim that Nationstar, BOA, or both violated Regulation Z.

### C. Claim 3: UCL Violation

Section 17200 of California's UCL prohibits all unlawful, unfair, or fraudulent business acts or practices. Cal. Bus. & Prof. Code § 17200 *et seq*. Each of these three types of business acts or practices are independently actionable; "a plaintiff may show that the acts or practices at issue are either unlawful *or* unfair *or* deceptive." *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1169 (2002). "A business practice is 'unlawful' if it is forbidden by law." *Id.* (internal quotation marks omitted). "Unfair" business practices are those which "offend[] an established public policy"; are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; or those which do not outweigh "the gravity of the harm to the alleged victim." *Id.* at 1169-70 (internal quotation marks omitted). Finally, a business practice is "deceptive" if "members of the public are likely to be deceived." *Id.* at 1170. The Mazonases claim Nationstar and BOA violated all three prongs of the UCL.

Alleged violations of the CLRA and TILA serve as the basis for the Mazonases' claim that the conduct of BOA and Nationstar is "unlawful." Only Nationstar challenges whether the UCL claim based on unlawful or unfair conduct is pleaded adequately. For the reasons addressed above, the CLRA claim is not viable, and thus cannot also provide the predicate for a UCL violation. In contrast, the Mazonases have pleaded violations of TILA and Regulation Z, and

therefore they have adequately pleaded claims against BOA and Nationstar for UCL violations.[3]

The Mazonases further argue the conduct of Nationstar and BOA was not only unlawful, but also unfair. Only Nationstar challenges the sufficiency of the averments establishing unfair conduct. The Mazonases' principal complaint is that Nationstar and BOA did not treat the two partial payments made in October as a completed payment, as BOA had done for nearly a decade. To counter this position, Nationstar points to the terms of the Deed of Trust regarding periodic payments:

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Period Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.

BOA RJN Ex. B at 4 (Deed of Trust). Nationstar contends it followed the terms of this contract to the letter by holding the Mazonases' October 31 partial payment in a suspense account while it waited for the second partial payment. When it did not receive the second half of the payment due November 1, it returned the check to the Mazonases.[4]

---

[3] The Mazonases argue the alleged violation of TILA may provide the basis for their UCL claim even if defendants show the statute of limitations should bar their claim. Plaintiffs seeking to vindicate violations of the UCL have four years to file claims, in contrast to TILA's one-year statute of limitations. Cal. Bus. & Prof. Code § 17208. Nationstar does not respond to this point, but independent research confirms the weight of authority favors the Mazonases' position. "In TILA cases, courts have held that differences between federal and state statute of limitations do not result in conflict preemption because the longer state statute of limitations provides an additional level of protection for consumers and are not inconsistent with federal law." *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1309 (S.D. Cal. 2014), *aff'd*, No. 15-55106, 2016 WL 909163 (9th Cir. Mar. 10, 2016) (collecting cases). *But see Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1126-27 (N.D. Cal. 2009) ("Plaintiff's TILA rescission and damages claims are time-barred, and thus his UCL claim based on TILA violations likewise fails."). Thus, even if the Mazonases ultimately fail to persuade this court that equitable tolling revives their TILA claim, their UCL claim survives.

[4] Nationstar does not address the discrepancy between the amount withdrawn by BOA from the

This interpretation of events overlooks the Mazonases' main contention—that BOA and/or Nationstar had received full payment by November 1, 2013, but failed to credit them for the money received October 15.  If BOA had received the full payment due on November 1, 2013, then Nationstar had no cause to charge them late fees or refuse to apply those payments.  Such conduct may be "unfair" within the meaning of the UCL.

Finally, the Mazonases contend Nationstar and BOA made fraudulent representations. Accordingly, they must plead this theory of proof with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). The reasonable-consumer standard governs whether a business practice is deceptive under the UCL.  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 513 (2003).

The central dispute in this case is whether the letters from BOA and Nationstar, informing borrowers of the transfer could cause a reasonable consumer to believe Nationstar would apply the two partial payments made in October 2013 by November 1, 2013.  In particular, BOA represented the transfer to Nationstar would "not affect the terms or conditions of [the Mazonases'] mortgage loan, other than those terms directly related to the servicing of the loan." BOA RJN Ex. C.  BOA further informed the Mazonases that the automatic payments would cease "as of October 31, 2013," but the "monthly payment would not be affected by this transfer." *Id.* Nationstar offered further explanation about how it would treat payments made to BOA before the transition:  "If you have already sent a payment to [BOA], they will forward it to us, and we will credit your account.  You will not be charged a late fee for any on-time payments sent to [BOA] for 60 days following the transfer date of your loan." Nationstar RJN Ex. 4.  The crux of the Mazonases' claim is whether these statements were misleading because Nationstar did not, in fact, credit the Mazonases' account with the amounts withdrawn by BOA and the transfer did affect their monthly payment.

Nationstar and BOA argue that no consumer in the Mazonases' position has a reasonable

---

Mazonases' account and the amount of the refund check.

expectation that the loan servicer would apply the "partial payment" received October 31 because the Deed of Trust explicitly does not require the loan servicer to credit partial payments on the day of receipt. *See Brakke v. Econ. Concepts, Inc.*, 213 Cal. App. 4th 761, 772 (2013) ("In order to be deceived, members of the public must have had an expectation or an assumption about the matter in question . . . ." (internal quotation marks omitted)). In making this argument, BOA and Nationstar again overlook the key to the Mazonases' claim: that they had made a *complete* payment by October 31. Assuming BOA had received the full amount due on November 1, BOA's representation that the transfer would not affect the monthly payment and Nationstar's statement about how payments would be credited were misleading. The Mazonases have adequately identified who said what, when, and explained how it was deceptive; Rule 9(b)'s mandate is therefore satisfied.

### D. Claim 4: Breach of Contract

To state a claim for breach of contract under California law, plaintiffs must plead four elements: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). Citing California procedural law, Nationstar faults the Mazonases for failing to quote the relevant contractual language verbatim or to attach a copy of the contract to the complaint. The Federal Rules of Civil Procedure govern pleadings in federal courts, and so neither asserted deficiency undermines the adequacy of the complaint. Nevertheless, plaintiffs in federal court must "'identify the specific provision of the contract allegedly breached by the defendant,'" which is not the same as a recitation of the contract's precise terms. *Misha Consulting Grp., Inc. v. Core Educ. & Consulting Sols., Inc.*, No. C-13-04262-RMW, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013) (quoting *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012)). The Mazonases may satisfy this burden by "identify[ing] with specificity the contractual obligations allegedly breached by the defendant." *Id.*

Both BOA and Nationwide argue the Mazonases have failed adequately to plead breach of

contract because neither the Note nor Deed of Trust requires the lender (and loan servicers) to credit partial payments on the date they receive payment. Again, BOA and Nationstar refuse to accept the facts set forth in the complaint. The Mazonases aver that they "had paid their November 1, 2013 mortgage payment in full" by November 1 when BOA withdrew half that full amount on October 15 and half on October 31. Compl. ¶ 49. Thus, Nationstar's failure to apply this *full* payment on the date it was due, may have been a breach of contract. Accordingly, the Mazonases have sufficiently pleaded a claim for breach of contract.

## V.   CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted in part and denied in part. The Mazonases' first claim for a violation of the CLRA is dismissed without leave to amend. Their remaining three claims are adequately pleaded, and therefore may advance.

**IT IS SO ORDERED**.

Dated: May 4, 2016

_____
RICHARD SEEBORG
United States District Judge